UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DEENA M. EPPS o/b/o T.J.D.,
         Plaintiff,

-against-

NANCY BERRYHILL,
Acting Commissioner of Social Security,
         Defendant.

---

No. 14-CV-5497 (NSR)(LMS)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

  Plaintiff Deena M. Epps ("Plaintiff") commenced this action on behalf of her son, T.J.D. ("Claimant"), pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner's decision to deny her son supplemental security income ("SSI"). The case was referred to Magistrate Judge Lisa M. Smith ("MJ Smith"), pursuant to 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b), to issue a Report and Recommendation ("R & R") on Plaintiff's motion and Defendant's cross-motion for judgment on the pleadings. Presently before the Court is MJ Smith's R & R recommending that Plaintiff's motion be denied and that Defendant's cross-motion be granted. The Parties had until January 22, 2018 to file objections to the R & R. Plaintiff submitted an objection to the Court on January 19, 2018. Defendant filed a response to the objection on February 02, 2018. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is DENIED and Defendant's cross-motion is GRANTED.



1

**BACKGROUND**

The following facts are derived from the administrative record and the parties' submissions.

**Procedural History**

Plaintiff filed for SSI on behalf of Claimant on August 26, 2011. The alleged disability onset date is Claimant's date of birth, January 3, 2008. (Admin. R. ("R") 143-49.) The Claimant was alleged to be disabled due to kidney and asthma problems. (R. 116.) On October 17, 2011 the Plaintiff's claim was denied. (R. 93, 112-17.) Plaintiff subsequently filed a written request for a hearing on November 18, 2011. (R. 120-23.) A hearing was held on October 11, 2012, where Plaintiff appeared before the administrative law judge ("ALJ") with counsel and provided testimony. (R. 80-92.) On October 19, 2012, the ALJ issued a decision finding that the Claimant was not disabled. (R. 22-37.) Plaintiff's request for review was denied on May 13, 2014. (R. 1-6, 21.) The instant action was commenced on July 24, 2014. (*See* ECF No. 1)

**Facts**

Claimant was evaluated for a possible multicystic kidney and right malrotated kidney shortly after birth. (R. 284-85.) On February 23, 2008, Plaintiff brought Claimant to the hospital because he was "breathing funny." (R. 367.) The record notes that Claimant was prescribed albuterol and informed that he needed a nebulizer. (R. 367.) Between November 2008 and June 2009, Claimant was monitored for elevated blood lead levels. However, by June of 2009, Claimant's blood lead levels had returned to normal. (R. 397-99, 409.)

On December 14, 2010, Claimant had an initial consultation with pediatric urologist Dr. Paul F. Zelkovic to follow up on the possible diagnosis of a multicystic dysplastic kidney. (R.

226-27.) At a follow up appointment on January 5, 2011, Dr. Zelkovic reviewed a renal scan of Claimant that showed "no discernable function in the left kidney" and diagnosed Claimant with renal dysplasia and kidney anomaly. (R. 229-30). On August 2, 2011, Dr. Zelkovic recommended removal of Claimant's nonfunctioning kidney. (R. 231-33.) The following month, Dr. Zelkovic performed a left nephrectomy/uterectomy. (R. 234, 246.)

On December 15, 2011, Claimant underwent an audiological evaluation at the recommendation of Dr. Puja H. Singh who found Claimant had difficulty with a hearing screening. (R. 383.) On January 23, 2012, Dr. Rami Payman diagnosed Claimant with T&A hypertrophy, obstructive sleep apnea, speech delay, bilateral chronic mucoid otitis media, bilateral conductive hearing loss, and ETD. (R. 382.) He recommended a "T&A and BMT."[1] The surgery was scheduled for March 20, 2013 although there is no record it was ever performed. (R. 417.)

On July 20, 2012, Dr. Singh saw Claimant for a routine physical whereupon Plaintiff expressed no concerns about Claimant. (R. 330-34.) In completing a Pediatric School, Camp, and Daycare Physical form, Dr. Singh reported that Claimant had a speech delay, only one kidney, and asthma for which he was taking albuterol. Dr. Singh noted Claimant passed his hearing screening and cleared him for strenuous activities. (R. 412.) On July 30, 2012, Dr. Aaron Blum treated Claimant for breathing issues. (R. 328-29.) Dr. Blum diagnosed Claimant as having asthma with acute exacerbation and started Claimant on prednisone. (R. 328-29.) On August 23, 2012 Dr. Damon Delbello and Dr. John Galeno noted that Claimant was "totally incapacitated from 8-23-12 to present" due to "flexible feet with bilateral antiversion." (R. 416.) On August

---

[1] "T&A" stands for tonsillectomy and adenoidectomy. "BMT" stands for "insertion of bilateral tubes (BMTs) in [Claimant's] ears for the drainage of fluids." (*See* R & R n. 11.)

3

28, 2012 Dr. Zelkovic wrote on a prescription pad that Claimant "should refrain from contact sports due to a solitary right pelvic kidney." (R. 415.)

## LEGAL STANDARD

**Standard of Review**

In reviewing a magistrate's R & R, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see Gabrielsen v. Colvin*, No. 12-CV-5694, 2015 U.S. LEXIS 99806, at *2 (S.D.N.Y. July 30, 2015). Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2), parties may submit objections to the R & R. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1); *see also Gabrielsen*, 2015 U.S. LEXIS 99806, at *2. When a party raises a timely objection, the Court reviews *de novo* the contested sections of the R & R to which the parties objected. 28 U.S.C § 636(b)(1); Fed. R. Civ. P. 72(b)(1); *Pizzaro v. Bartlett*, 776 F. Supp. 815, 817 (2d Cir. 1991). Because 28 U.S.C. § 636(b)(1) requires a *de novo* determination rather than a *de novo* hearing, "the district court is free to place 'whatever reliance…in the exercise of sound judicial discretion [it chooses] to place on a magistrate's proposed findings and recommendations.'" *Pizarro*, 776 F. Supp. at 817 (quoting *Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir. 1989)). When no objection has been made, the court may adopt the R & R so long as the findings and conclusions set forth in those sections are not clearly erroneous. *Eisenberg v. New Eng. Motor Freight, Inc.*, 564 F. Supp. 2d 224, 226 (S.D.N.Y. 2008).

Given Plaintiff's objection's, the Court must determine whether the ALJ's findings are supported by substantial evidence. *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). In reviewing a denial of benefits, the court is to uphold the Commissioner's decision unless it is unsupported by substantial evidence or is based on an error of law. *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). It is not the function of the reviewing court to determine *de novo* whether the claimant is disabled. *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996).

**Disability Determination**

The SSI program provides benefits to "needy aged, blind, or disabled individuals" who meet certain statutory income and resource limitations. *Frye v. Astrue*, 485 Fed. Appx. 484, 486 (2d Cir. 2012). Pursuant to 42 U.S.C. § 1382c(a)(3)(C)(i), a child under the age of 18 will be considered "disabled" and entitled to benefits if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i); *see also Pacheco v. Barnhart*, No. 03-CV-3235, 2004 U.S. Dist. LEXIS 10865, at *5-*6 (E.D.N.Y. June 14, 2004).

In determining disability in a minor, an ALJ applies a three-step sequential analysis. *See* 20 C.F.R. § 416.924(a)-(d); *Pacheco*, 2004 U.S. Dist. LEXIS 10865, at *6. First, the ALJ determines whether the child is engaged in any substantial gainful activity. *See* C.F.R. 20 § 416.924(b); *Pacheco*, 2004 U.S. Dist. LEXIS 10865, at *6. If the claimant is not, the second step is to determine whether the child has a medically severe impairment or combination of impairments.[2] *See* 20 C.F.R. § 416.924(c); *Pacheco*, 2004 U.S. Dist. LEXIS 10865, at *6. The third step is to determine whether the child's impairments meet, medically equals, or functionally

---

[2] An impairment is "severe" if it results in more than a "slight abnormality" or if it constitutes a "combination of slight abnormalities that causes… more than minimal functional limitations." 20 C.F.R. § 416.924(c).

5

equals any impairment listed at 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Listings"). *See* 20 C.F.R. § 416.924(d); *Pacheco*, 2004 U.S. Dist. LEXIS 10865, at *6. Under current regulations, there are six domains of functioning[3] under which claimants are analyzed according to how well he or she is capable of performing relative to children of a comparable age. *Encarnacion ex rel. George v. Barnhart*, 331 F.3d 78, 80 (2d Cir. 2003). Only claimants who are found to have "marked"[4] limitations in two domains, or an "extreme"[5] limitation in a single domain may be deemed eligible. *Id.*

**Credibility Determination**

The social security regulations ("SSR") provide, "[i]f you are a child under age 18 and are unable to adequately describe your symptom(s), we will accept as a statement of this symptom(s) the description given by the person who is most familiar with you, such as a parent, other relative or guardian." 20 C.F.R. § 416.928(a); *see Porter v. Colvin*, 14-CV-547S, 2016 WL 1084162, at *8 (W.D.N.Y. Mar. 21, 2016). An ALJ is free to accept or reject the testimony of a claimant's parent. *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir. 1988). Any finding that a witness is not credible must be set forth with "sufficient specificity to permit intelligible plenary review of the record." *Carroll v. Secretary of Health and Human Servs.*, 705 F.2d 638, 643 (2d Cir. 1983). Whatever findings the ALJ makes must be consistent with medical and other evidence. *McLaughlin v. Secretary of Health, Educ. and Welfare*, 612 F.2d 701, 705 (2d Cir. 1980).

---

[3] The six domains of functioning are (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) self-care; (6) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1).
[4] A "marked" limitation is one that is "more than moderate" but "less than extreme." *See* 20 C.F.R. § 416.926(e)(2)(1).
[5] An extreme limitation is one which "interferes very seriously" with a child's ability to initiate, sustain, or complete activities." *See* 20 C.F.R. § 416.926(e)(3)(i).

The SSR provide a two-step framework for evaluating a claimant's subjective complaints. First, the ALJ must determine whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. 20 C.F.R. § 416.929(b). This requirement stems from the fact that "subjective assertions of pain alone cannot ground a finding of disability." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). If an impairment is found, then the ALJ must evaluate "the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how those symptoms can limit [the claimant's] capacity for work or, if [the claimant is] a child, [the claimant's] functioning." 20 C.F.R. § 416.929(c)(1). The ALJ is not required to accept the claimant's subjective complaints without question. *Grenier*, 606 F.3d at 49. He or she may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record. *Id.*

In making the credibility determination, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of claimant's pain and other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate the pain or other symptoms; (5) any treatment, other than medication, the claimant has received; (6) any other measures the claimant employs to relieve pain or symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain or other symptoms. *See Simmons v. Comm'r of Soc. Sec.*, 103 F. Supp. 3d 547, 569 (S.D.N.Y. 2015) (citing 20 C.F.R. § 416.929(c)(3)). The ALJ is not required to discuss every factor so long as "the decision includes precise reasoning, is supported by evidence in the case record, and clearly indicates the weight the ALJ gave to the claimant's statements and the reasoning for that weight." *Id.* Thus, "if the Commissioner's findings are supported by substantial evidence, the court must uphold the ALJ's

decision to discount a claimant's subjective complaints…" *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984).

## DISCUSSION

In her motion for judgment on the pleadings, Plaintiff contends only that the ALJ erred in failing to make a proper credibility determination with respect to Plaintiff's testimony and/or reports.

**The ALJ's Findings**

On October 19, 2012, the ALJ issued a written decision denying Plaintiff's application for SSI benefits on behalf of Claimant. (R. 25-37.) In performing the three-step analysis set forth above, the ALJ determined at step one that the Claimant had not engaged in substantial gainful activity. (R. 28.) At step two, the ALJ determined that the Claimant's only severe impairments were his "status post left nephrectomy/uterectomy and asthma."[6] (R. 28.) At step three, the ALJ found that these impairments when considered either individually or together neither met, medically equaled, nor functionally equaled a Listing. (R. 29.) The ALJ concluded that the Claimant did not have marked limitations in two domains of functioning or an extreme limitation in one domain of functioning. (R. 29-37.) Thus, the ALJ concluded that the Claimant was not disabled. (R. 37.)

---

[6] The ALJ initially found the Claimant suffered from severe impairments "status post left nephrectomy/uterectomy, asthma, hearing loss, and speech delay. However, in his analysis he determined that the Claimant's foot impairment, history of elevated blood lead levels, speech problem, and hearing loss were not severe impairments. (R. 28-29.)

**The ALJ's Credibility Determination**

In her motion for judgment on the pleadings, Plaintiff sole contention is that the ALJ erred in failing to make a proper credibility determination with respect to Plaintiff's testimony and/or reports. (*See* ECF No. 15) Regarding the credibility determination, the ALJ stated:

> After considering the evidence of the record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with finding that the claimant does not have an impairment or combination of impairments that functionally equals the listings for the reasons explained below. (R. 30)

The Plaintiff contends that "this 'boilerplate language' is insufficient to convey the ALJ's rationale in determining credibility." (Pl. Mem. of Law in Supp. of Mot. (Pl. Mot.) 10; ECF No. 15.) However, MJ Smith found, and this Court agrees, that "a reading of the ALJ's decision shows that his credibility determination is based upon and supported by the evidence in the record, including consideration of objective medical evidence as well as evidence concerning Claimant's daily activities, the effectiveness of his medications, and the treatment he received." (R & R at 21; ECF No. 24)

With regard to Claimant's kidney impairment the ALJ found that "medical evidence does not suggest that the claimant has 'marked' or 'extreme' limitation in any functional domain." (R. 30.) The ALJ and R & R note that the Plaintiff "reported that the Claimant was disabled due to kidney and breathing problems. She testified that the claimant is unable to participate in sports activities, and indicated that he has frequent asthma-related symptoms that require regular treatment." (*See* R. 30; R & R at 21) The Plaintiff testified that she is unable to work due to Claimant's illness, Claimant is unable to play sports as a result of his operation, and that he automatically gets sick if he does not eat or drink correctly. (Pl. Mot. at 10.)

9

The Plaintiff asserts this testimony indicates at least a marked limitation in Claimant's ability to interact and relate to others as well as health and well-being. (Pl. Mot. at 11.) However, the ALJ explained that the post-operative report provided by Dr. Zelkovic indicated that "the claimant's overall development, including bladder/bowel function, was within normal limits, and the claimant was prescribed no medication for his condition. The claimant was advised to refrain from contact sports." (R. 30-31.) Further, Dr. Zelkovic "described his surgical site as well-healed; the claimant was recommended only for routine follow up care." (R. 30.) This report directly contradicts the Function Report completed by Plaintiff in connection with Claimant's application for SSI in which she indicated that Claimant had no bladder or bowel control. (R. 176.) Further, the record provides evidence of four separate occasions where the Claimant was assessed by physicians as being within normal limits and where the Plaintiff expressed no additional concerns.[7] Thus, the ALJ properly considered the Plaintiff's claims along with all other available evidence and information such as symptoms, necessary medication, and functional limitations. Accordingly, this Court finds that the ALJ made a proper credibility determination with regard to Plaintiff's claims about Claimant's post-operative limitations.

In regard to Claimant's breathing impairment, the ALJ found that Claimant's asthma does not result in a "marked" or "extreme" limitation. (R. 31.) In 2012, Claimant was assessed as having asthma with acute exacerbation and prescribed prednisone. (R. 328-329.) On an undated document, Dr. Blum noted that Claimant required "short courses of corticosteroids that average more than 5 days per month for at least 3 months during a 12-month period" and that Claimant

---

[7] On September 16, 2011 Dr. Edward Reda provided responses to a questionnaire for the New York State Office of Temporary Disability Assistance, Division of Disability Determination where he reported that Claimant was asymptomatic and had a good post-operative prognosis. (R. 261-63. 266.) On October 18, 2011 Dr. Fe Alpasca saw Claimant for a routine physical noted that Claimant was progressing within normal limits. Plaintiff did not express any additional concerns at this appointment. (R. 345-46.) At Claimant's physical the following year, Plaintiff again expressed no additional concerns and Dr. Singh found Claimant to be progressing within normal limits. (R. 330-34.)

had "intermittent wheezing and a cough which required him to take prednisone for five days." (R. 414.) Plaintiff testified that Claimant's asthma requires him to take albuterol and use a nebulizer three times a day. (R. 88.) On October 31, 2011, Claimant's preschool teacher Rebecca Rousso completed a teacher questionnaire where she noted Claimant had asthma and shortness of breath but that there was not an unusual degree of absenteeism.[8] (R. 305, 311.) She reported that Claimant had asthma attacks approximately twice a month and used a nebulizer three times a day. (R. 311.) In addition, Rousso noted that Claimant used albuterol for breathing and prednisone "when needed/prescribed x 5 days." She noted that after "taking his medications and treatments," Claimant was able to "breathe much better on his own." (R. 311.)

The ALJ found that Claimant's asthma is adequately managed with medication and that the record does not indicate that Claimant has required in-patient care as a result of his asthma. (R. 31.) The Plaintiff asserts that "the magistrate routinely continues to point to evidence from the record that supposedly discounts Claimant's disability. However, discussing the record in a vacuum and not explaining why Plaintiff was not credible as to the reality of her child's impairments simply does not satisfy the credibility requirements." (Pl. Objection (Pl. Obj.) to R & R 3; ECF No. 24.) However, this assertion is insufficient. The ALJ's conclusion demonstrates a proper analysis of Plaintiff's claims in relation to other evidence and information such as Claimant's daily activities, treatment, and effectiveness of medication.

Additionally, the ALJ stated that he gave "great weight" to the report of Dr. Bostic, the State Agency pediatric medical consultant who "conducted a thorough review of the record." (R. 31.) Upon review of all available medical records, Dr. Bostic determined that Claimant's

---

[8] The Court notes that Rousso had only known the Claimant for approximately 6 weeks. R. 305.

impairments were not severe and found less than marked limitations in the area of health and physical well-being.[9] (R. 31.) Further, Dr. Bostic noted that Claimant's surgery was successful and the only limitation was to refrain from contact sports. (R. 31.) With respect to Claimant's asthma, Dr. Bostic stated that the condition was controlled by medication and had not required hospitalization. (R. 31.) Thus, Dr. Bostic concluded claimant did not have any impairments that functionally equaled a disability listing. (R. 31.) Accordingly, this Court agrees with MJ Smith that the ALJ made a proper credibility determination based on substantial evidence in the record with regard to Claimant's breathing and kidney impairments.

Regarding Claimant's speech problems, Plaintiff asserts that the ALJ failed to address the Function Report she submitted on behalf of Claimant with the SSI application and her hearing testimony in connection with the credibility statement. (R. 170-77, 84-88.) However, the ALJ determined at step two of his disability analysis that Claimant's speech impairment was not severe. (R & R at 23.) At the hearing, Plaintiff testified that Claimant was in speech therapy because he could not speak clearly for his age or say many words. (Pl. Mot. at 10; *see also* Exh. B10F.) In the Function Report submitted on August 26, 2011, Plaintiff checked off that Claimant was not totally unable to talk but that he could "hardly ever" be understood by people who did not know him well. (Pl. Mot. at 12.) She further reported that Claimant's communication and learning abilities are limited. (Pl. Mot. at 12.)

In concluding that the speech impairment was not severe, the ALJ referred to the assessment provided by Rousso which "indicated that the claimant left off the beginning and ending of sounds but that a familiar listener would be able to understand claimant most of the

---

[9] Dr. Bostic found no limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, or caring for yourself. R. 31.

time."[10] (R. 29; Exh. 10F.) Plaintiff asserts that the ALJ's finding that Claimant's speech impairment is not severe is an implicit rejection of her testimony. (Pl. Obj. at 4) Plaintiff testified that Claimant "cannot use complete sentences; he does not talk about what he is doing; does not ask for what he wants; does not tell about things and activities that happened in the past; cannot tell a story; cannot answer questions about stories; and cannot deliver a telephone message." (Pl. Ob. 4-5; Admin. Trans. at 172-73.) However, Plaintiff failed to indicate if the Claimant's inability to perform these tasks is due to his speech impairment or his limited communication and learning abilities. Moreover, Plaintiff's testimony is contradicted by Rousso's report which indicates that "the claimant had no difficulty comprehending or understanding school material, no difficulty attending or focusing, and that he interacted with peers and adults in an age-appropriate manner." (R. 29.) In addressing the domain of "Interacting and Relating with Others" the ALJ again pointed to the evidence provided by Rousso which indicated "Claimant had no difficulty in this area, as he played cooperatively, he made and kept friends, followed rules, respected and obeyed adults, took turns and used adequate vocabulary and grammar to express himself." (R. 34. Ex. B9F.) Thus, the ALJ properly considered relevant factors such as Claimant's daily activities, treatments, as well as functional limitations. Accordingly, this Court agrees with MJ Smith that the ALJ's findings regarding the credibility of the Plaintiff's statements concerning "the intensity, persistence, and limiting effects of Claimant's symptoms" are supported by substantial evidence in the record.

---

[10] Rousso reported that she understood Claimant's speech one-half to two-thirds of the time when the topic of conversation was known but no more than one-half of the time when the topic of conversation was unknown. She stated that as a familiar listener and after repetition and/or rephrasing, she understood Claimant one-half to two-thirds of the time. (R. 309.)

13

## CONCLUSION

For the reasons set forth above, upon review of the record, and the R & R, the Court finds the ALJ made a proper credibility determination and adopts MJ Smith's R & R in its entirety. Plaintiff's motion for judgment on the pleadings is DENIED and Defendant's cross-motion for judgment on the pleadings is GRANTED. The Clerk of the Court is respectfully directed to terminate the motions at ECF Nos. 14 and 20, and to terminate the action.

Dated: April 17, 2019
White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge